IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00909-MSK-MEH

ZACHARY KRISTON,

      Plaintiff,

v.

TONY PEROULIS,
HARRY PEROULIS,
DEL TURNER,
VENETIAN HOTEL OPERATIONS, LLC,
HUTCHISON & STEFFEN, LLC,
E. ROBERT SPEAR,
HARRAH'S ENTERTAINMENT INC.,
CLARK COUNTY DISTRICT ATTORNEY,
MICHAEL ACCARDI,
SANDRA RATANA, and
DARYLL ROSENBLATT,

      Defendants.

---

# RECOMMENDATION

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is Defendant E. Robert Spear's Motion to Dismiss [filed August 27, 2009; docket #38], Defendant Del Turner's Motion to Dismiss [filed September 8, 2009; docket #47], Defendant Sandra Ratana's Motion to Dismiss [filed September 29, 2009; docket #65], Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's joint Motion to Set Aside Entry of Default [filed October 7, 2009; docket #79] and Motion to Dismiss [filed October 7, 2009; docket #78], and Defendant Michael Accardi's Motion to Dismiss [filed November 25, 2009; docket #141]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. LCivR 72.1C, these matters are

referred to this Court for recommendation.  (Dockets ##39, 59, 65, 80, 81, 143.)  The Motions are briefed, and oral argument would not materially assist the Court in their adjudication.  For the reasons set forth below, the Court **RECOMMENDS** that these Motions be **GRANTED**, and Defendants Spear, Turner, Ratana, Harrah's Entertainment Inc., Hutchison & Steffen, LLC, and Accardi be dismissed from this action with prejudice.[1]

The Court further **RECOMMENDS** that Defendant Clark County District Attorney be dismissed from this action without prejudice due to Plaintiff's failure to properly serve this defendant.  (*See* docket #49.)

Additionally, the Court **RECOMMENDS** Plaintiff's Motion for Leave to Amend Multidistrict Complaint [filed January 29, 2010; docket #180] be **DENIED** as out of time and, in any event, futile and precluded by undue delay.

## BACKGROUND

As described in his 126-page Complaint, the facts of this case appear to arise from a business enterprise attempted by Plaintiff, through the entities American Royalty Crusade, Kings Court Command, LLC, and Kings Court Command Corporation.  Plaintiff represents that between 2002

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

and 2004, Plaintiff "initiated" individuals as members into the Kings Court Command, LLC, purposed to fund "conceptual" plans for "United States based Castles [sic] for the wealthy." (Docket #1 at 13, 17.) Plaintiff states four million dollars were invested by himself and "other associates of the American Royalty Crusade throughout the many years." (*Id*. at 14.) Plaintiff alleges that the American Royalty Crusade network includes "over 100 private members." (*Id*. at 15.)

Plaintiff recounts that he met Defendant Tony Peroulis in January 2004, through an introduction facilitated by Defendant Turner. (*Id*. at 17.) Plaintiff contends Defendant Tony Peroulis invested hundreds of thousands of dollars in the business enterprise and as personal loans to Plaintiff. (*See id.* at 18, 19, 21.) Plaintiff asserts the terms of these loans, namely the 10% rate of interest, were extortionate and usurious. (*Id*. at 22, 24.) Plaintiff describes Defendant Tony Peroulis as an "individual 'enterprise'" utilizing a "'trickle in the money' method" to "control" Plaintiff. (*Id*. at 23.) Plaintiff also writes how costs were abundant for him at that time, and he "setoff many expenses through gaming winnings at Las Vegas casinos." (*Id*. at 25.) Plaintiff argues that Defendant Tony Peroulis ultimately loaned him 4.5 million dollars, with continued "usurious" terms. (*Id*. at 26.)

Plaintiff subsequently "disclosed" to Defendant Tony Peroulis his "V.I.P. 'Diamond Card' holder status of membership with Harrah's Entertainment, Inc.," which Plaintiff utilized to house a "computer prototype," participate in gaming to raise capital, and "entertain would be guests to Las Vegas." (*Id*. at 28.) Plaintiff then became a "'Seven Star' V.I.P. client of Harrah's" and "was breaking gaming records" which brought in money that invited Defendant Tony Peroulis' "requests of greed." (*Id*. at 30.) For reasons not disclosed in the Complaint, on April 28, 2006, Plaintiff was arrested while staying at the Venetian Hotel. (*Id*.) On May 3, 2006, Defendants Tony Peroulis and

Turner traveled to Las Vegas, and with Defendant Accardi, bailed Plaintiff out of jail. (*Id.* at 32.) As the months passed, Plaintiff asserts that Defendant Tony Peroulis continued a "pattern of racketeering activity" to harass and extort Plaintiff, and that Defendant Tony Peroulis threatened to cancel the bond issued by Defendant Accardi through Bad Boys Bail Bonds, LLC, if Plaintiff did not comply. (*Id.* at 34.)  Ultimately, it appears that Plaintiff entered into a plea agreement regarding the criminal matter for which he was arrested on October 24, 2006. (*See id.* at 36.)

Plaintiff then recounts that he won an "$84,000 dollar jackpot in Keno gaming, at Harrah's Entertainment, Inc.'s 'Harrah's Hotel and Casino.'" (*Id.* at 39.)  Plaintiff states he intended to deliver $25,000 of these winnings to Defendant Accardi of Bad Boys Bail Bonds so as to "eliminate any further harassments and threats of Tony Peroulis." (*Id.*)  The Court discerns that Plaintiff believes Sandra Ratana, a limousine driver, made such delivery to Defendant Accardi. (*Id.*)

Plaintiff alleges that Defendants Turner and Tony Peroulis continued to "affectively [sic] damage all of [Plaintiff's] wherewithal of financial means." (*Id.* at 40.)  Accordingly to Plaintiff, Defendant Tony Peroulis retained Defendant Spear of Defendant Hutchison & Steffen, LLC, to represent him in "conspiring" to collect an "unlawful debt" owed to Peroulis by Plaintiff. (*Id.* at 40-41.)  Defendant Peroulis, through counsel Defendant Spear, filed a complaint for the debt in the U.S. District Court for the District of Nevada, on March 6, 2007. (*Id.* at 42.)

The next series of events are not entirely clear from the description in the Complaint. Plaintiff describes how, on his birthday, a Harrah's employee brought him a cake purposed to "persuade" Plaintiff to a hotel room, where police broke down the door and allegedly kicked Plaintiff in the rib cage. (*Id.* at 43-44.)  Plaintiff asserts that the police were "Thugs" used by Defendant Tony Peroulis to extort repayment of the loans in question. (*Id.* at 44.)  Plaintiff believes that Defendant Harrah's Entertainment, Inc. conspired with the police "thugs" to allow the police

4

into Plaintiff's hotel room, where the police then took Plaintiff's property in conjunction with Defendant Hutchison & Steffen, LLC.  (*Id*. at 45.)  Plaintiff was held in Clark County Detention Center for some amount of time, including the date of March 23, 2007, and was sentenced on March 29, 2007.  (*Id*. at 47-48.)  Plaintiff does not disclose the criminal charges for which he was detained and sentenced.

On April 18, 2007, Plaintiff alleges Defendant Accardi issued a check to Defendant Ratana for $21,695, taken from the $25,000 bond given to Defendant Accardi by Plaintiff, as delivered by Defendant Ratana.  (*Id*. at 49.)  Plaintiff believes this exchange of money was at the instruction of Defendant Tony Peroulis, in order to impede Plaintiff's ability to hire counsel for his business entities in defense of the civil lawsuit filed through the services of Defendant Spear.  (*Id*.)  Plaintiff asserts that Defendant Hutchison & Steffen, LLC, "conceal[ed]" these "racketeering activities."  (*Id*. at 50.)  The Court discerns that Plaintiff was still incarcerated at this time.[2]  (*See id.* at 50-55.) Plaintiff extensively describes his perception that the Nevada court system, including individually named judges, also participated in and facilitated the "racketeering activity."[3]  (*See generally id.*)

While incarcerated, Plaintiff contends that another inmate, Defendant Rosenblatt, referred Plaintiff to Brent Percival, Esq.  (*Id*. at 54.)  Plaintiff represents that he retained Mr. Percival, who was listed as a defendant in this matter but has since been dismissed, on September 15, 2007, to represent Kings Court Command, LLC and Kings Court Command Corporation in the civil

---

[2]According to the Complaint, Plaintiff was released on parole by September 2008.  (Docket #1 at 63.)

[3]At the Status Conference on July 24, 2009, the Court discussed with Plaintiff the government defendants identified in Plaintiff's case.  (Docket #17.)  Plaintiff stated he would like to dismiss the government defendants but declined the Court's invitation to file an Amended Complaint.  (*See* docket #18.)

proceedings initiated by Defendant Tony Peroulis in the U.S. District Court for the District of Nevada. (*Id*. at 55.)  Plaintiff states that Mr. Percival informed Plaintiff of his friendship with a partner with the firm of Defendant Hutchison & Steffen, LLC. (*Id*.)  Plaintiff alleges that Mr. Percival intentionally "forgot" to disclose particular evidence in the civil proceeding, and this forgetful behavior was again facilitated by Defendants Tony Peroulis, Spear, and Hutchison & Steffen, LLC, and the Nevada federal court system. (*Id*. at 56.)  Ultimately, default judgment was entered in favor of Defendant Tony Peroulis and against Kings Court Command, LLC for $322,500 and against Kings Court Command Corporation for $3,095,250. (*Id*. at 57.)  Plaintiff appealed this judgment to the U.S. Court of Appeals for the Ninth Circuit.[4] (*Id*. at 59-60.)

Plaintiff also believes Defendants Spear and Hutchison & Steffen, LLC, conspired to prevent the State of Nevada from conducting parole hearings regarding Plaintiff's release. (*Id*. at 60.)  Plaintiff contends Defendant Rosenblatt, upon his release, became a representative for Defendant Tony Peroulis' "interests," by infiltrating Plaintiff's "'Seven Star' account" with Defendant Harrah's Entertainment, Inc. (*Id*. at 61.)  Plaintiff accuses the U.S. Department of Justice of ignoring his claims of irreparable damages in contravention of the law and complains that the U.S. Department of Justice has "only made efforts to pursue" Defendant Tony Peroulis' allegations against Plaintiff, which also, according to Plaintiff, implicates the United States in Defendant Peroulis' "racketeering activity." (*Id*. at 63-64.)

---

[4]The Ninth Circuit recently affirmed the lower court's judgment.  The Ninth Circuit declined to allow a challenge to the entry of default judgment against Kings Court Command Corporation or Kings Court Command, LLC, "because Kriston is not an attorney and may not, therefore, represent these entities in federal court." *Peroulis v. Kozak*, No. 08-16615, 2010 WL 178700 (9th Cir. 2010).

Of the remaining Defendants, E. Robert Spear, Del Turner, Sandra Ratana, Harrah's Entertainment Inc., Hutchison & Steffen, LLC, and Michael Accardi filed Motions to Dismiss for a variety of reasons, including lack of personal jurisdiction, improper venue and failure to state a claim for which relief can be granted.  (*See* dockets ##38, 47, 65, 78, 141.)   Under the *Iqbal/Twombly* pleading standard, the Court agrees that Plaintiff fails to state a claim upon which relief can be granted, and recommends that these six Defendants be dismissed from this action with prejudice.

The Court summarizes facts specific to each of these six Defendants and each Defendant's dispositive motion in turn.

## I.  Defendant Spear

Plaintiff Kriston includes Defendant Spear in the list of "District of Nevada Defendants." (Docket #1 at 9.)  Plaintiff Kriston describes Defendant Spear as a lawyer in Clark County, Nevada, employed by Defendant Hutchison & Steffen, LLC.  (Id.)  Count VI of the Complaint names Defendant Spear with Defendant Hutchison & Steffan, LLC and two other Defendants who have since been dismissed.  (*Id*. at 77.)  Count XXIII also names Defendant Spear, again with two other Defendants who have since been dismissed.  (*Id*. at 109.)

Plaintiff Kriston alleges that Defendant Spear conspired to violate RICO through participation in Defendant Tony Peroulis' "illicit 'enterprise'" of "lending his personal and family money to private individuals at a usurious rate."  (*Id*. at 77 (referencing *id*. at 69).)  Specifically, Plaintiff Kriston argues Defendant Spear violated Section 1962(c) of 18 U.S.C.[5]  Plaintiff Kriston

---

[5]Section 1962(c) of 18 U.S.C. provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

asserts Defendant Spear committed a litany of federal and Nevada state offenses, including but not limited to "collection of extortionate credit," involuntary servitude, and conspiracy. (*Id*. at 77-78.)

Defendant Spear moves the Court to dismiss all causes of action against him for lack of personal jurisdiction and lack of proper venue. (Docket #38 at 2.) In the alternative, Defendant Spear requests the Court to dismiss the case for failure to state a claim pursuant to RICO. According to Defendant Spear, through this lawsuit, Plaintiff attempts to collaterally attack the judgment entered against him in the Nevada federal civil proceeding. Defendant Spear declares that he represented Defendant Tony Peroulis in the civil case filed against Plaintiff in Nevada, which resulted in the default judgment. (Docket #38-2 at 2.)

In response to Defendant Spear's Motion to Dismiss, Plaintiff asserts that the Court may exercise personal jurisdiction over Defendant Spear because his "activities" were "in concert" with Defendant Peroulis, whose enterprise is based in Colorado. (Docket #58 at 5.) Plaintiff additionally contends Defendant Spear fraudulently misrepresents the facts of this matter to the Court. (*Id*. at 5-6.) In reply, Defendant Spear reiterates his argument that Plaintiff fails to properly allege racketeering activity or a pattern of racketeering activity in the Complaint. (Docket #73 at 2.) Defendant Spear further states this action is precluded by *res judicata*, as the Nevada federal court previously held that Plaintiff embezzled over 3.4 million dollars from Defendant Tony Peroulis. (*Id*. at 3.)

## II.    Defendant Turner

Plaintiff describes Defendant Turner as "an individual and subversive member of both the plaintiff entities of the American Royalty Crusade and Kings Court Command LLC." (Docket #1

---

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

at 6.)  Plaintiff links Defendant Turner to Defendant Tony Peroulis, as he alleges Defendant Peroulis sent Defendant Turner to Las Vegas to "inspect" the Plaintiff business entities' offices, leading to Defendant Tony Peroulis' signing of an "Agreement to Join and Participate in Enterprise" on February 10, 2004.  (*Id*. at 17.)  In May 2006, Plaintiff asserts Defendant Turner accompanied Defendant Tony Peroulis to Las Vegas again, from Colorado, to bail Plaintiff out of jail.  (*Id*. at 32.) After bailing Plaintiff out of jail, Plaintiff contends that Defendant Peroulis "posed concerns of the recent arrest and how that may effect [sic] the outcome of funding," and Defendant Turner threatened Plaintiff that he would "be f****d up by one of [his] biker friends" if Plaintiff did not provide Defendant Peroulis access to an account held by First National Bank of the Rockies.  (*Id*.) Plaintiff represents he provided such access through signing prepared documents which facilitated Defendant Peroulis to "gain an unauthorized control over Kings Court Command Corporation account."  (*Id*. at 32, 35.)

Count IV of Plaintiff's Complaint articulates his claims against Defendant Turner.  Plaintiff alleges Defendant Turner participated in Defendant Tony Peroulis' "illicit 'enterprise'" of "lending his personal and family money to private individuals at a usurious rate."  (*Id*. at 73-74 (referencing *id*. at 69).)  Specifically, Plaintiff argues Defendant Turner, like Defendant Spear, violated Section 1962(c) of 18 U.S.C.  Plaintiff conclusively asserts Defendant Turner committed a litany of federal and Colorado and Nevada state offenses, including but not limited to "collection of extortionate credit," involuntary servitude, and conspiracy.  (Docket #1 at 74.)  In sum, it appears to the Court that Plaintiff again contests the collection of "an unlawful debt and control the enterprise[6]" by

---

[6]The "enterprise" thus referred to is the Kings Court Command Corporation, which, as described by Plaintiff is a "licit 'enterprise' . . . engaged in . . . interstate or foreign commerce." (Docket #1 at 66.)

Defendant Turner, through his assistance to Defendant Tony Peroulis.  (*Id.* at 75.)

Defendant Turner moves the Court to dismiss Plaintiff's allegations with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and 41(b).  Defendant Turner asserts that Plaintiff Kriston's claims "fail for the simple reason that the Plaintiff was adjudged by a competent court to have embezzled those monies from Defendant Peroulis . . . the debt is lawfully owed."  (Docket #47 at 4.)  Defendant Turner believes Plaintiff Kriston's Complaint fails to state a RICO claim against Defendant Turner and violates Rule 8(a) of the Federal Rules of Civil Procedure.  (*Id.* at 4-5.)

In response, Plaintiff offers only cursory statements that Defendant Turner's counsel misuses and misunderstands the allegations.  (Docket #58 at 7.)  In reply, Defendant Turner reiterates his arguments that the Complaint fails to state a claim for relief against Defendant Turner, under RICO or Colorado or Nevada Organized Crime Control Acts.  (Docket #69 at 2.)  Moreover, Defendant Turner, like Defendant Spear, asserts that Plaintiff is improperly attempting to collaterally attack a prior judgment.  (*Id.*)

## III.  Defendant Ratana

Plaintiff identifies Defendant Ratana as an "individual and employee of the defendant Bell Trans, and a resident of Clark County, Nevada."  (Docket #1 at 11.)  Plaintiff names Defendant Ratana in Counts IX and XXVII of the Complaint, both alleging "conspiracy to violate RICO."  (*Id.* at 83-84, 117-119.)  In these Counts, Plaintiff alleges Defendant Ratana conspired with Defendant Accardi and Defendant Bell Trans (which is now dismissed), in violation of Section 1962(c) of 18 U.S.C.  Plaintiff asserts these Defendants conspired in support of Defendant Tony Peroulis, who Plaintiff defines as "an illicit 'enterprise.'"  (*Id.* at 69, 83.)  Plaintiff further contends these Defendants conspired in support of Defendant Hutchison & Steffan, LLC, which Plaintiff also considers an "enterprise."  (*Id.* at 107, 117.)

10

Defendant Ratana describes her relationship to Plaintiff as having "simply acted as a limousine driver for [Plaintiff]." (Docket #65 at 3.) Defendant Ratana represents that she turned over $21,695 in bail money to Defendant Hutchison & Steffen, LLC, to be held in trust "pending a decision by the court 'as to who is entitled to possession of the funds.'" (*Id*. at 5.) Defendant Hutchison & Steffen, LLC, was permitted to hold the funds in its trust account pursuant to a pre-judgment writ of attachment. (*Id*. at 5-6.) The Court discerns three grounds for dismissal raised in Defendant Ratana's motion: failure to state a claim, lack of personal jurisdiction, and improper attempt to re-litigate or collaterally attack a previously issued judgment.

In response to Defendant Ratana's Motion to Dismiss, Plaintiff describes the motion as "baseless" and "inept." (Docket #86 at 4.) Plaintiff contends that because this action arises under RICO, each defendant is subjected "to the long arm jurisdiction that accounts for all unlawful activities" in "Nevada and Colorado." (*Id*.) Plaintiff refers to Defendant Ratana's "intent in acquiring [Plaintiff's] $21,695," for the purpose of aiding Defendant Tony Peroulis and Defendant Spears' holding of the funds "until a later date." (*Id*. at 5.) Plaintiff appears to rely on the previously pending appeal to the Ninth Circuit challenging the default judgment as "acquired through fraudulent pretenses." (*Id*. at 6.)

In her reply, Defendant Ratana restates the grounds for dismissal based on lack of personal jurisdiction as raised in her motion. (Docket #98 at 2-3.) Defendant Ratana also contends that Plaintiff fails to respond to the motion in any meaningful way, and in fact, fails to set forth any argument against dismissal for failure to state a claim upon which relief can be granted, in addition to the other grounds for dismissal raised by the motion. (*Id*. at 3.)

**IV.    Defendants Harrah's Entertainment, Inc. and Hutchison & Steffen LLC**

Plaintiff describes Defendant Hutchison & Steffen, LLC, as "a law firm that practices within Nevada State." (Docket #1 at 9.)  Plaintiff identifies Defendant Harrah's Entertainment, Inc. as "a foreign corporation in Nevada State and registered corporation of Delaware State." (*Id.* at 10.)  Plaintiff names Defendant Hutchison & Steffen, LLC, in Counts VI, XX, and XXII, and Defendant Harrah's Entertainment, Inc. in Counts VIII, XX, and XXV of the Complaint.  Each of the "Counts" allege "conspiracy to violate RICO." (*Id.* at 77, 81, 104, 107, 114.)  Similarly to all other Defendants, Plaintiff lists alleged federal and Nevada state criminal offenses supposedly committed by these Defendants, including wire and mail fraud, "subornation to perjury," and "collection of extortionate credit."  In essence, Plaintiff contends Defendant Hutchison & Steffen, LLC conspired in contravention of the law with Defendant Spear in Defendant Spear's representation of Defendant Tony Peroulis in the civil action against Plaintiff in Nevada federal court.  Plaintiff believes Defendant Harrah's Entertainment, Inc. also conspired in support of Defendant Tony Peroulis, in that Defendant Harrah's Entertainment, Inc. was the location of the hotel in which Plaintiff was arrested. (*See id.* at 30-32.)

Defendants Hutchison & Steffen, LLC and Harrah's Entertainment, Inc. jointly filed a Motion to Set Aside Entry of Default and a Motion to Dismiss. (*See* dockets #78, 79.)  The Court describes both motions in further detail below, in Section I of the Analysis portion of this recommendation.

**V.    Defendant Accardi**

Plaintiff identifies Defendant Accardi as "an individual while personating and operating" a bail bonding company named Bad Boys Bail Bonds, LLC, in Las Vegas, Nevada. (Docket #1 at 11.)  Plaintiff contends Defendants Turner and Tony Peroulis "engag[ed]" Defendant Accardi "with Bad

Boys Bail Bonds, LLC in bailing [Plaintiff] out of jail." (*Id*. at 32.)  Plaintiff brings Counts IX and XXVII against Defendant Accardi, for "conspiracy to violate RICO," in cooperation with Defendant Ratana and Bell Trans, a previously named defendant which has since been dismissed. (*Id*. at 83-84, 117-119.)  Plaintiff alleges Defendant Ratana conspired with Defendant Accardi and Bell Trans in violation of Section 1962(c) of 18 U.S.C.  Plaintiff asserts these Defendants acted in support of Defendant Tony Peroulis, who Plaintiff defines as "an illicit 'enterprise.'" (*Id*. at 69, 83.)  Plaintiff further contends these Defendants conspired in support of Defendant Hutchison & Steffan, LLC, which Plaintiff also considers an "enterprise." (*Id*. at 107, 117.)

In his Motion to Dismiss, Defendant Accardi argues that Plaintiff fails to state a claim, fails to comply with the Federal Rules of Civil Procedure, and failed to properly effect service on Defendant Accardi. (*See* docket #141.)  Defendant Accardi represents that he refunded the $25,000 "cash collateral" minus certain lawful expenses back to Defendant Ratana, as she had posted the collateral, consistent with Nevada law. (*Id*. at 10.)  Defendant Accardi states that Plaintiff fails to demonstrate the "requisite pattern of racketeering activity because there is no threat of continued criminal activity," as the discrete (and legal) act of returning the money to Defendant Ratana is complete. (*Id*. at 11.)

In response, Plaintiff contends Defendant Accardi filed the motion to dismiss in order to "delay and divert the prosecution of this case." (Docket #157 at 2.)  Plaintiff conclusively states that personal service was "effective upon Mr. Accardi on August 17, 2009." (*Id*.)  Plaintiff reiterates his belief that Defendant Accardi embezzled the bail bond money and impermissibly gave the funds to Defendant Ratana. (*Id*. at 4.)  To date, Defendant Accardi has not replied in support of his motion.

**STANDARD OF REVIEW**

I.      **Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "[W]here the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## II.     Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

I.     **Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's Joint Motion to Set Aside Entry of Default and Joint Motion to Dismiss**

The Court first addresses Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's joint Motion to Set Aside Entry of Default, and then evaluates these Defendants' joint Motion to Dismiss. (Docket #78, 79.) Plaintiff moved for the entry of default on September 3, 2009. (Docket #46.) On September 9, 2009, the Clerk of Court entered default against these two Defendants upon a motion by Plaintiff and pursuant to Fed. R. Civ. P. 55(a). (Docket #50.)

Plaintiff submitted an affidavit representing that service had been conducted on Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC. (Docket #46-2 at 3.) The Proof of Service for Defendant Hutchison & Steffen, LLC, states the server "sent such summons, complaint and addendum, through Certified/Express Mail . . . on August 7, 2009." (Docket #46-4 at 18.) The Proof of Service for Harrah's Entertainment, Inc. indicates the same. (*Id*. at 23.)

In their motion, Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC request the Court to set aside the entry of default, because Plaintiff failed to personally serve Defendants as required by Fed. R. Civ. P. 4(h) and Nev. R. Civ. P. 4(d)(1). (Docket #79 at 3.) Defendants contend this faulty service is proper grounds to set aside the entry of default. (*Id*. at 4.) In response, the Court discerns that Plaintiff centers his argument around his perception that Defendants had "notice" of this action due to the other actions pending before the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Court for the District of Nevada. (Docket #91 at 3-4.) However, Plaintiff offers no other indication that personal service was successfully accomplished regarding these two Defendants.

Federal Rule of Civil Procedure 55 governs Default Judgments.  Rule 55 states in pertinent part, "the court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Review of case precedent analyzing "good cause" for the purposes of Rule 55(c) demonstrates procedural deficiencies such as inadequate service, lack of subject matter jurisdiction, or lack of personal jurisdiction constitute good cause allowing an entry of default to be set aside.[7]  *See United States v. Rice*, No. 08-8029, 2008 WL 4471366 (10th Cir. 2008) (holding *pro se* Defendant's failure to file a responsive pleading pursuant to Rule 12 and failure to give an adequate reason for such failure does not constitute good cause and supports an entry of default); *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794 (10th Cir. 2008) ("a default judgment in a civil case is void if there is no personal jurisdiction over the defendant" (citation omitted)); *Polaski v. Colo. Dep't of Transp.*, 198 F. App'x 684 (10th Cir. 2006) (holding default judgment was properly set aside based on the plaintiff's failure to personally serve the complaint on the defendant); *Guttman v. Silverberg*, No. 05-2180, 2005 WL 3462805, at *3 (10th Cir. 2005) ("lack of subject matter jurisdiction constitutes good cause to set aside an entry of default").  Default judgments are generally disfavored by courts.  *Polaski*, 198 F. App'x at 685.

"Undisputedly, absent good service, the Court has no *in personam* or personal jurisdiction over a defendant."  *Deville v. Wilson*, 208 F. App'x 629, 631 (10th Cir. 2006).  Fed. R. Civ. P. 4(h) provides that a corporation must be served either by following state law for service or by delivering a copy of the summons and complaint "to an officer, a managing or general agent, or any other agent

---

[7]"The good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)."  *United States v. Rice*, No. 08-8029, 2008 WL 4471366, at *2 (10th Cir. Oct. 6, 2008) (citing *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997)).

authorized . . . to receive service . . . ." *See also Hukill*, 542 F.3d at 797 (stating Rule 4 permits service of a summons and complaint upon a corporation by following state law for such service). Nev. R. Civ. P. 4(d) requires personal service upon a Nevada corporation. As both of the registered agents for the two Defendants in question are identified as within Nevada, the Court finds personal service was required by the federal and Nevada state rules. (*See* docket #91-2 at 11, 14.)

Plaintiff's own materials indicate service was merely mailed to Defendants Harrah's Entertainment, LLC, and Hutchison & Steffen, LLC. (Docket #46-4 at 18, 23 (stating that the server "sent such summons, complaint and addendum, through Certified/Express Mail . . . on August 7, 2009").) Plaintiff's response demonstrates nothing to show personal service, and, when read carefully, does not directly (or indirectly, for that matter) address the contentions in Defendants' Motion to Set Aside Entry of Default. To date, nothing on the docket indicates Plaintiff has attempted to cure the identified defect in service. Accordingly, the Court finds Defendants establish good cause as required by Fed. R. Civ. P. 55(c) to set aside an entry of default, in that the lack of proper service excuses these Defendants' initial non-appearance. The Court thus recommends that Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's joint Motion to Set Aside Entry of Default be granted.

In recommending so, the Court recognizes it has effectively ruled on the primary ground raised in Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's Motion to Dismiss, that is, lack of personal jurisdiction due to improper service. (*See* docket #78 at 3.) Notably, in their Motion to Dismiss, Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC request the Court to dismiss the claims against them with prejudice, in light of Plaintiff's "admitted litigation experience." (*Id*. at 5.) According to the Tenth Circuit, "dismissal for lack of personal jurisdiction should be without prejudice when it does not address merits of [the]

claim." *Yaklich v. Grand County*, 278 F. App'x 797, 803 (10th Cir. 2008) (citing *Holander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002)).  Thus, for the sake of thoroughness and judicial efficiency, the Court proceeds to evaluate the merits of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) as raised in all of the dispositive motions presently before the Court for recommendation.  (*See* docket #78 at 5.)  For these reasons and those stated below, the Court recommends Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's joint Motion to Set Aside Entry of Default and Motion to Dismiss be granted, and Plaintiff's claims against Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC be dismissed with prejudice.

## II.     Plaintiff's Failure to State a Plausible RICO Claim

"The purpose of RICO is 'the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Marlow v. Allianz Life Ins. Co. of N. Amer.*, No. 08-cv-00752-CMA-MJW, 2009 WL 1328636, at *3 (D. Colo. May 12, 2009) (citing S. Rep. No. 617 91st Cong., 1st Sess. 76 (1969)).  "In order to bring a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009) (citation omitted).  For the reasons stated below, the Court finds Plaintiff fails to allege facts demonstrating a plausible RICO violation and thus implicating an entitlement to relief, as required by the *Iqbal/Twombly* pleading standard defined above.

Assuming the element of "conduct" is pled properly in this matter, Plaintiff does not establish the remaining three elements required to articulate a RICO violation.  In the Tenth Circuit, Plaintiff must plausibly plead that "all the defendants participated in the affairs of an 'enterprise,' as defined in 18 U.S.C. § 1961(4)." *General Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, No. 07-cv-01145-DME-KMT, 2009 WL 535780, at *21 (D. Colo. Mar. 2, 2009).  The

RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (West 2009).  To satisfy the "enterprise" element of a RICO claim, Plaintiff must demonstrate (1) "the existence of 'an ongoing organization with a decision-making framework or mechanism for controlling the group,'" (2) "that various associates function as a continuing unit," and (3) "that the enterprise exists 'separate and apart from the pattern of racketeering activity.'" *Gen. Steel Domestic Sales, LLC*, 2009 WL 535780, at *21 (citing *United States v. Smith*, 413 F.3d 1253, 1266-67 (10th Cir. 2005)).  In sum, "a RICO enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  *Smith*, 413 F.3d at 1266 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Here, the Court discerns nothing from the facts stated in Plaintiff's Complaint that would establish an "enterprise" within the purpose and meaning of RICO, even in a light most favorable to Plaintiff.  Plaintiff fails to articulate any non-conclusory facts indicating that all of these individual persons and entities function as a continuing unit separate and apart from any pattern of alleged "racketeering activity."  At best, Plaintiff recounts a series of events leading up to discrete conclusions, that is, Plaintiff's incarceration (for an unknown criminal charge) and the assumably unrelated civil matter in Nevada resulting in a default judgment, which has since been affirmed by the Ninth Circuit.[8]  Nothing in Plaintiff's Complaint demonstrate that the "associates" named as Defendants in this matter continue to function (or truly did function) as an ongoing organization or

[8]Plaintiff alerted the Court to his appeal of the entry of default judgment giving rise to the claims in this matter.  According to the record, the Ninth Circuit affirmed the lower court and denied Plaintiff's appeal on January 11, 2010.  *Peroulis v. Kozak*, No. 08-16615, 2010 WL 178700 (9th Cir. 2010).

unit.  *See Smith*, 413 F.3d at 1266.

To satisfy RICO's pattern requirement, Plaintiff must plausibly allege sufficient continuity of conduct.  *Hall*, 584 F.3d at 867.  Plaintiff must establish "not only that the defendants had committed two or more predicate acts, but also 'that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.'"  *Id*. (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (emphasis in original).  Assertions of "a closed-ended series of predicate acts constituting a single scheme to accomplish a discrete goal . . . directed at only one individual with no potential to extend to other persons or entities" do not articulate the requisite pattern of continuing racketeering activity.  *Id*. (citation omitted).  Such claims may refer to a common scheme, but fail to describe a threat of continuing criminal activity.  *See Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001).

Similar to the Court's conclusion regarding no articulated "enterprise," the Court finds the allegations in Plaintiff's Complaint fail to state a plausible threat of continuing criminal activity.  The Court discerns from Plaintiff's recounting of events and request for relief that Plaintiff seeks to recover from the default judgment entered against him in the Nevada federal civil proceeding.  Importantly, Plaintiff attached a notarized promissory note executed between himself and Defendant Tony Peroulis as Exhibit Nine to the Complaint.[9]  (Docket #1-2 at 41.)  The promissory note, drafted by Plaintiff who identifies himself as "the undersigned," is dated August 15, 2004, and the designated value is $4,500,000.  The note indicates that payment is the "sole responsibility" of

---

[9]This Court "must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, . . . as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed." *Colo. Legal Serv. v. Legal Aid Nat'l Serv.*, No. 08-cv-00258-MSK-KMT, 2009 WL 347500, at *2 (D. Colo. Feb. 11, 2009) (citations omitted).

Plaintiff, and repayment "represents the extent of [Plaintiff's] personal generosity and shall remain same regardless of any future monetary transactions between the undersigned parties."  Even if the Court were to read some ambiguity into this promissory note that could favor Plaintiff, according to principles of contract construction, ambiguous language must be "construed strictly *against* the drafter."  *Leprino Foods Co. v. Feldmeier Equipment, Inc*., No. Civ.A03CV02461MSKOES, 2006 WL 278550, at *4 (D. Colo. Feb. 3, 2006) (citation omitted) (emphasis added).

The promissory note, in light of the allegations in the Complaint, demonstrate to the Court that again, Plaintiff complains about a series of discrete acts intended against one individual for one purpose, that is, the repayment of the monies loaned to Plaintiff by Defendant Tony Peroulis.  As stated above, such claims could refer to a common scheme, but fail to describe a threat of continuing criminal activity as required by RICO.  *Duran*, 238 F.3d at 1271.  *See also Marlow*, 2009 WL 1328636, at *3 (a plot aimed with a discrete goal "does not implicate any sort of threat of future criminal conduct, and thus cannot meet this 'pattern' requirement").

Additionally, a "'pattern of racketeering activity' requires at least two acts of racketeering activity."  *Id*. (citing 18 U.S.C. § 1961(5)).  Such acts must be identified as a "predicate act" according to Section 1961(1) of 18 U.S.C.  "Simply listing the litany of offenses allegedly committed by defendants, without any specification as to which acts (1) qualify as § 1961 predicate acts and (2) also occurred within the time frame required to satisfy § 1961(5), is insufficient to state a RICO claim."  *Dalton v. City of Las Vegas*, 282 F. App'x 652, 655 (10th Cir. 2008) (footnote omitted).  Review of the Counts against Defendants in this matter show exactly this, a listing of a "litany of offenses allegedly committed by defendants."  (*See* docket #1 at 65-124.)

In evaluating these motions to dismiss, the Court must discern whether the Complaint provides "more than labels and conclusions" or merely "a formulaic recitation of the elements of a

cause of action," so that the Court would not be "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp.*, 550 U.S. at 555 (citation omitted).  Plaintiff repeatedly states that money was embezzled from him at the instruction of Defendant Tony Peroulis; however, considering the four corners of the promissory note Plaintiff attached to his Complaint, the Court declines to find that such money was embezzled and the loan terms were "usurious," because Plaintiff himself drafted the terms explicitly providing for repayment and for a specific future interest rate.  (*See* docket #1-2 at 41.)  Moreover, both the U.S. District Court for the District of Nevada and the U.S. Court of Appeals for the Ninth Circuit found that the debt arising from the promissory note was lawfully owed, and thus entered and affirmed default judgment against Plaintiff.  *See Peroulis*, 2010 WL 178700, at *1.  This Court is in no position, particularly in light of the conclusory allegations in the Complaint compared with the plain language of the attached promissory note, to find otherwise.

The Court must draw on its own judicial experience and common sense in evaluating whether Plaintiff's Complaint states a plausible claim for relief.  *Iqbal*, 129 S. Ct. at 1950.  In sum, the Court determines the majority of Plaintiff's allegations are conclusory, and the remaining factual contentions lead the Court to believe that this action is about an individual who contracted for a loan, who did not repay the loan, and who is now paying the price for his past decisions.  The Court's role is not one of monitoring or awarding poor business or personal financial choices.  The Court thus concludes Plaintiff fails to plead facts allowing the Court to draw any reasonable inference that Defendants are liable for the misconduct alleged, that is, a violation of the RICO statute.  *Id.* at 1949.  Accordingly, the Court recommends Defendant E. Robert Spear's Motion to Dismiss, Defendant Del Turner's Motion to Dismiss, Defendant Sandra Ratana's Motion to Dismiss, and Defendant Michael Accardi's Motion to Dismiss be granted, and Defendants Spear, Turner, Ratana, Accardi,

Harrah's Entertainment Inc., and Hutchison & Steffen, LLC, be dismissed from this action with prejudice.

### III.    Plaintiff's Failure to Properly Serve Defendant Clark County District Attorney

According to the docket, Plaintiff has not yet properly served Defendant Clark County District Attorney.  Plaintiff moved for the entry of default against Defendant Clark County District Attorney on September 3, 2009, but the Clerk of Court declined to enter default.  (*See* dockets #46, 49.)  The Clerk of Court stated that service "was not accomplished due to a failure to provide proof of service on said Defendants to the Court, as filed proofs of service made to the court according to the requirements set forth in Fed. R. Civ. P. 4(j)(2), or Nevada Rules of Civil Procedure 4(d)(5)." (Docket #49 at 2.)

Pursuant to Fed. R. Civ. P. 4(m), proper service on Defendant Clark County District Attorney was due on or before August 19, 2009.  The Clerk of Court's Note Regarding Default declining to enter default against Defendant Clark County District Attorney put Plaintiff on notice as early as September 9, 2009, that service had not been properly accomplished.  (*See* docket #49.)  However, to date, nothing on the docket indicates Plaintiff has attempted to cure this defect.

Although Plaintiff is proceeding in this case without an attorney, he bears the responsibility of prosecuting this case with due diligence.  The Court must liberally construe *pro se* filings; however, *pro se* status does not excuse the obligation of any litigant to comply with the same rules of procedure that govern other litigants.  *See Green v.  Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).   In pertinent part, Fed. R. Civ. P. 4(m) dictates:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

24

The Court provided notice to Plaintiff through the Clerk of Court's Note Regarding Default on September 9, 2009. (Docket #49.) Plaintiff has not cured the identified defect in service. Accordingly, pursuant to Fed. R. Civ. P. 4(m), the Court recommends Defendant Clark County District Attorney be dismissed without prejudice from this action, due to Plaintiff's failure to complete service.

## IV.   Plaintiff's Motion for Leave is Untimely and Futile

Plaintiff filed a Motion for Leave to Amend Multidistrict Complaint on January 29, 2010. (Docket #180.) Plaintiff brings this motion pursuant to Fed. R. Civ. P. 15. Plaintiff states the proposed First Amended Complaint "reduce[s] the content level of the complaint to concentrate only on remaining defendants" and provides an "actual computation of damages." (*Id.* at 3.) The proposed First Amended Complaint is one hundred pages, plus fifteen exhibits. (*See* dockets #180-2, 180-3, 180-4, 180-5.)

Defendants Hutchison & Steffen, LLC and Harrah's Entertainment Inc. filed a response to Plaintiff's motion for leave. (Docket #183.) Defendants Spear and Turner joined in this response. (*See* dockets #185, 188.) Defendants oppose the motion for leave because they assert amendment is futile, discovery has closed in this matter, and the Ninth Circuit ruled on Plaintiff's appeal. (Docket #183 at 1.) Defendants contend "plaintiff's true remedy lies in his appeal process and not on these egregious collateral attacks on a prior judgment." (*Id.* at 4.)

Although not raised in the response, the Court recognizes that the deadline for joinder of parties and amendment of pleadings was November 17, 2009. (Docket #90 at 24.) None of the parties requested an extension of this deadline. Accordingly, the amendment requested by Plaintiff would require modification of the schedule set in the Scheduling Order. A Scheduling Order may be modified only upon a showing of "good cause" under Fed. R. Civ. P. 16(b). The standard for

"good cause" is the diligence demonstrated by the moving party in attempting to meet the Court's deadlines. *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). "Rule 16 erects a more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Id.* However, rigid adherence to the scheduling order is not advisable. *Sil-Flo, Inc. v. SHFC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990). A failure to timely amend may be excused if due to oversight, inadvertence or excusable neglect. *Id.*

Plaintiff offers no explanation for his failure to timely amend in the pending motion. Plaintiff brings the motion solely pursuant to Fed. R. Civ. P. 15. (Docket #180 at 3.) As the proposed amendments merely restate the allegations in the original Complaint, and further explain the damages requested in the original Complaint, the Court perceives no legitimate reason why Plaintiff would not have known of these issues before the deadline to amend. Thus, the Court finds no good cause to allow modification of the scheduling order, and recommends Plaintiff's motion be denied.

In any event, even if good cause existed to amend the scheduling order, the Court agrees with Defendants' assertion that amendment would be futile, not to mention also precluded by undue delay. The Court must heed Rule 15's mandate that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend may be refused "only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). Plaintiff seeks leave in order to clarify his claim for damages, but as the Court concluded in this Recommendation, Plaintiff fails to state a claim upon which damages could be awarded. Moreover, after review of the

proposed First Amended Complaint, the Court discerns very little change in the factual presentation

of Plaintiff's case.  Thus, the Court finds amendment could not cure the deficiencies in Plaintiff's

claims as described in this Recommendation.  Moreover, as stated above, Plaintiff is merely restating

the facts and damages alleged in the original Complaint, and thus knew of the amendments at the

time he initiated this case, thereby implicating undue delay in seeking leave to amend.  Accordingly,

the Court recommends that Plaintiff's Motion for Leave to Amend Multidistrict Complaint be denied

as out of time and, in any event, futile and precluded by undue delay.

## CONCLUSION

Accordingly, the Court **RECOMMENDS** Defendant E. Robert Spear's Motion to Dismiss

[filed August 27, 2009; docket #38], Defendant Del Turner's Motion to Dismiss [filed September

8, 2009; docket #47], Defendant Sandra Ratana's Motion to Dismiss [filed September 29, 2009;

docket #65], Defendants Harrah's Entertainment Inc. and Hutchison & Steffen, LLC's joint Motion

to Set Aside Entry of Default [filed October 7, 2009; docket #79] and Motion to Dismiss [filed

October 7, 2009; docket #78], and Defendant Michael Accardi's Motion to Dismiss [filed November

25, 2009; docket #141] be **GRANTED**;

Defendants Spear, Turner, Ratana, Harrah's Entertainment Inc., Hutchison & Steffen, LLC,

and Accardi be **dismissed** from this action **with prejudice**;

Defendant Clark County District Attorney be **dismissed** from this action **without prejudice**;

and

Plaintiff's Motion for Leave to Amend Multidistrict Complaint [filed January 29, 2010;

docket #180] be **DENIED**.[10]

_____

[10]Be advised that all parties shall have fourteen (14) days after service hereof to serve and
file any written objections in order to obtain reconsideration by the District Judge to whom this case
is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings

Dated at Denver, Colorado, this 19th day of February, 2010.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).